Daniel W. Anderson, A0080
Bradley L. Tilt, A7649
FABIAN & CLENDENIN,
 a Professional Corporation
215 South State Street, Twelfth Floor
P.O. Box 510210
Salt Lake City, Utah  84151-0210
Telephone:    (801) 531-8900

*Attorneys for Plaintiffs*

FILED IN UNITED STATES DISTRICT
COURT, DISTRICT OF UTAH

APR 2 9 2004

BY MARKUS B. ZIMMER, CLERK
DEPUTY CLERK

## IN THE UNITED STATES DISTRICT COURT,
### DISTRICT OF UTAH, CENTRAL DIVISION

| | |
|---|---|
| COUNTRYWIDE HOME LOANS, INC., a New York corporation; and MICHAEL JERRY ZUNIGA,<br><br>           Plaintiffs,<br><br>vs.<br><br>ARBITRATION ALLIANCE INTERNATIONAL, LLC, a Utah limited liability company; WINSTON SHROUT; NICKOLAS Wm. BIRD; REBECCA NELSON; FREDERICK D. JONES; RICHARD F. ZUMPANO; JOHN DOES 1 through 10; and JANE DOES 1 through 10,<br><br>           Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) |

**COMPLAINT**

Judge Tena Campbell
DECK TYPE: Civil
DATE STAMP: 04/29/2004 @ 16:20:46
CASE NUMBER:  2:04CV00390  TC

Plaintiffs Countrywide Home Loans, Inc. and Michael Jerry Zuniga complain against

Defendants and allege as follows:

307994_1

## INTRODUCTION

This action is being brought by the above-captioned Plaintiffs to invalidate a sham arbitration award based upon a "Freemen"-type claim initiated with a purported arbitral body that at no time had jurisdiction to oversee this or any other claim involving the Plaintiffs.  Freemen, and other groups like them, do not believe in many aspects of the United States monetary system.  They argue that when they take out a loan with a lender, notwithstanding the fact that the lender already has paid the amount of the loan to the them, it is the lender that must repay the Freemen borrowers -- for in their minds the loan is only given value by virtue of the fact that the Freemen will be making monthly payments.  Such nonsensical and completely baseless arguments were raised in a series of documents sent by Defendant Richard F. Zumpano ("**Zumpano**") to Plaintiff Countrywide Home Loans, Inc. ("**Countrywide**"), which had previously originated a loan to Zumpano in Illinois.   In one such document, Zumpano states that if defendant Countrywide does not respond within ten days acknowledging that it owes him the amount of the loan, then his claims shall be considered "*Res Judicata, Stare Decisis*" and that Countrywide will waive its right to trial by a judge or jury and will "submit to binding arbitration."  There was no elaboration as to with whom or in what forum this unilaterally created supposed binding arbitration was to occur.  When Countrywide did not respond to Zumpano's document, he filed a purported arbitration claim, which was overseen by the other above-named defendants (collectively the "**Sham Arbitral Defendants**").  None of the actual binding loan documents between Countrywide and Zumpano provide for arbitration -- let alone arbitration with the "Arbitration Alliance International" entity with whom Zumpano filed the purported arbitration claim.  Moreover, there is no other valid agreement of the Plaintiffs that would provide the Sham

Arbitral Defendants with jurisdiction to hear Zumpano's baseless Freemen-type claim. Furthermore, Zumpano failed to effect any service of any type of process upon Countrywide or Zuniga to join either of them in, or otherwise bind either of them to, any arbitration proceedings, the very existence of which they first learned about only after the purported arbitration "Award" was entered as discussed more fully below.  Notwithstanding these and the other procedural infirmities detailed more fully below, the Sham Arbitral Defendants issued an award against the Plaintiffs herein for more than $40,000.00.  The Defendants' actions described herein are a complete affront to both this country's monetary system and to its judicial system.  For this reason, Plaintiffs respectfully request that this Court enter judgment in their favor.

This is the second case already this calendar year in which the above-named Defendant Arbitration Alliance International, LLC has issued a purported arbitration "Award" against Countrywide, and others associated with Countrywide, without the existence of any valid or binding agreement to arbitrate any claim, without jurisdiction, and without any even colorable claim or basis for the award.  With regard to the first such case, this Court recently granted motions by Countrywide to vacate the sham arbitration award and to restrain its enforcement. (See the April 14, 2004, "Memorandum Decision and Order on All Pending Motions and Order of Preliminary Injunction", on file with this Court in the case of <u>Countrywide Home Loans, Inc., et al.</u> v. <u>Arbitration Alliance International, LLC, et al.</u>, Civil No. 2:04CV00152 TS).

## **PARTIES AND JURISDICTION**

1.      Plaintiff Countrywide Home Loans, Inc. ("**Countrywide**") is a New York corporation, with its principal place of business in California.

2.      Plaintiff Michael Jerry Zuniga ("**Zuniga**") is an individual residing in the State of New Mexico, and is a former collections employee of the Loan Administration Department of Countrywide.

3.      Countrywide and Zuniga are occasionally referred to hereinafter collectively as "**Plaintiffs**".

4.      Defendant Arbitration Alliance International, LLC ("**AAI**") is a Utah limited liability company with its principal place of business in St. George, Utah.

5.      Defendant Winston Shrout ("**Shrout**") is an individual believed to be residing in the State of Utah, and is purportedly an "arbitrator" with and for AAI.

6.      Defendant Nickolas Wm. Bird ("**Bird**") is an individual believed to be residing in the State of Utah, and is purportedly the Director of Arbitration of AAI.

7.      Defendant Rebecca Nelson ("**Nelson**") is an individual believed to be residing in the State of Utah, and is purportedly a case coordinator with and for AAI.

8.      Defendant Frederick D. Jones ("**Jones**") is an individual believed to be residing in the State of Utah, and is purportedly a communications and public relations employee with and for AAI.

9.      Defendant Richard F. Zumpano ("**Zumpano**") is an individual believed to be residing in the State of Illinois and who purportedly initiated and prosecuted an "arbitration proceeding" in the State of Utah against Countrywide and Zuniga, purportedly with and through AAI as set forth below.

10.     Defendants John Does 1 through 10 and Defendants Jane Does 1 through 10 (collectively, the "**Doe Defendants**") herein are all named in such fictitious capacity until

Plaintiffs discern such defendants' true names and identifies, after which this Complaint herein will be amended to state the same.

11.     AAI, Shrout, Bird, Nelson, Jones, Zumpano, and all Doe Defendants, are occasionally referred to hereinafter collectively as "**Defendants**".

12.     Jurisdiction exists in this Court pursuant to 28 U.S.C. § 1331, 28 U.S.C. § 1332, 28 U.S.C. § 1367, and 9 U.S.C. § 10.

13.     Venue is appropriate in this Court under 28 U.S.C. § 1391 and 9 U.S.C. § 10.

## GENERAL ALLEGATIONS

14.     Plaintiffs incorporate into and make a part of these "General Allegations" each and every other allegation in this Complaint.

15.     Countrywide loaned to Zumpano an original principal amount of $218,000.00, secured by a first-position lien upon real property owned by Zumpano in the State of Illinois (the "**First Loan**"), and later loaned to Zumpano an additional principal amount of $30,000.00, secured by a second-position lien upon the Zumpano property (the "**Second Loan**").

16.     Zumpano defaulted on the First Loan and on the Second Loan.

17.     During the foreclosure process, Zumpano arranged for a voluntary sale of the subject real property, but the amount Zumpano negotiated for the sale of the property was not sufficient to satisfy both the First Loan and the Second Loan.

18.     As an inducement to obtain Countrywide's consent to the proposed sale of the property and to release both of its liens on such property without foreclosure, Zumpano agreed to sign a promissory note to Countrywide, agreeing and promising to repay to Countrywide a

portion of the deficiency that still remained due and owing from him to Countrywide on the underlying loans above and beyond the sale price for the property.

19.    On or about March 31, 2003, Zumpano executed and delivered to Countrywide a document entitled "Unsecured Promissory Note" (the "**Deficiency Note**") promising to repay the above-referenced portion of the deficiency amount to Countrywide. A copy of the Deficiency Note is attached hereto as Exhibit "A".

20.    The Deficiency Note is a contract which is a part of and which evidences, a transaction involving commerce.

21.    Other than the Deficiency Note, and the various documents relating to the underlying First Loan and Second Loan, there does not exist any other written document constituting or containing any contract or other agreement of any type or nature between Countrywide, on the one hand, and Zumpano, on the other hand.

22.    The Deficiency Note does not contain, nor do any of the documents relating to the underlying First Loan or the Second Loan contain, any language, terms, or provisions that in any way submit or agree to submit to arbitration any disputes, claims or causes of action in any way involving Zumpano.

23.    Zumpano's purported right to arbitrate supposedly arises from one of his documents sent to Countrywide advancing Freemen-type arguments. Zumpano admits to having "accepted" his debt, but then claims that this somehow transformed his debt to Countrywide into an obligation for Countrywide to pay money to him. At no point did Zumpano account for the fact that Countrywide had already funded the various loans to him. The referenced Zumpano letter (the "**Zumpano Freemen Letter**") proclaims that:

The UNITED STATES is bankrupt; the STATE OF Illinois is bankrupt; the MICHAEL ZUNIGN [*sic*] is bankrupt; COUNTRYWIDE HOME LOANS, INC. is bankrupt; RICHARD F ZUMPANO is bankrupt. The fundamental principle of bankruptcy is that there can be no adversarial proceedings in bankruptcy. Dishonor of my acceptance is adversarial and obstruction of bankruptcy. Dishonor of my acceptance will serve to fund the involuntary bankruptcy against your public hazard bond and the liquidation of your equity.

. . .

In the event that MICHAEL ZUNIGN [*sic*] should "dishonor" Richard F Zumpano, Authorized Agent's Acceptance for Value of Account Number 8441156 by *Tacit Procuration*, all issues are deemed settled *Stare Decisis* . . . .

. . .

Richard F. Zumpano grants MICHAEL ZUNIGN [*sic*] ten (10) days, exclusive of the day of receipt to respond to the statements, claims, and demands above. Failure to respond will constitute as an operation of Law, the admission of MICHAEL ZUNIGN [*sic*] by *tacit procuration* to the statement, claims, and demands shall be deemed *Res Judicata, Stare Decisis*. . . . [A copy of the Zumpano Freemen Letter is attached hereto as Exhibit "B" (emphasis in original)].

24.    The unilateral and non-binding Zumpano Freemen Letter and demand also contains the following provision regarding arbitration:

MICHAEL ZUNIGN [*sic*] agrees to submit to binding arbitration if the "acceptance for value" of this case is dishonored. MICHAEL ZUNIGN [*sic*] further agrees to waive all rights to a trial before a judge or jury, to observe this agreement and the arbitration Code of Procedure, and to abide by and perform any award rendered by the Arbitrator(s) or a judgment entered by a court having jurisdiction. . . . This agreement shall be governed by and interpreted under the Federal Arbitration Act, 9 U.S.C. Sections 1-16. [Zumpano Freemen Letter, Exhibit "B" hereto (emphasis in original)].

25.    The Zumpano Freemen letter was addressed to "Michael Zunign", Countrywide Home Loans, 450 American St., Simi Valley, CA 93065.

26.     Upon information and belief, Zumpano intended the Zumpano Freemen Letter for Countrywide.

27.     Countrywide has no employee, officer, director, representative, or agent (for receipt of service of process or otherwise) named "Michael Zunign". Upon information and belief, the Zumpano Freemen Letter was intended to be addressed to the attention of "Michael Zuniga."

28.     Neither Zuniga nor Countrywide consented or agreed to any of the contents of the Zumpano Freemen Letter.

29.     Apart from the non-binding Zumpano Freemen Letter drafted by Zumpano, which neither Zuniga nor Countrywide ever consented or agreed to, there is no real, legally binding agreement between Countrywide and/or Zuniga, on the one hand, and Zumpano, on the other hand, that provides for arbitration.

30.     Countrywide is the primary, wholly-owned subsidiary of Countrywide Financial Corporation ("CFC") which is a Fortune Magazine 500 company. Neither Countrywide nor CFC is bankrupt.

31.     Zuniga is not bankrupt.

32.     Upon information and belief, Zumpano is not bankrupt, and does not have any presently-pending bankruptcy.

33.     There does not exist any contract or agreement of any type or nature between Plaintiff Zuniga, on the one hand, and Zumpano, on the other hand.

34.     On November 12, 2003, Zumpano purported to initiate with Defendant AAI an arbitration case (the **"Purported Arbitration Case"**) making various claims and demands

apparently, although it is unclear, against both Countrywide and Zuniga (albeit it under the incorrect name "Zunign") for a purported "dishonor and default" under an unidentified "agreement," and seeking damages in the principal amount of $40,000.00, plus an additional $30,000.00 for unspecified "commercial damages" and interest at the rate of 18%. A true and correct copy of Zumpano's "Claim/Demand for Arbitration" (the "**Purported Arbitration Claim**") dated November 12, 2003, that was filed with AAI to initiate the Purported Arbitration Case is attached hereto as Exhibit "C".

35.    In a purported "Proof of Service" Zumpano claims he served, by certified mail, the Purported Arbitration Claim, and various other documents, upon "Michael Zunign, Countrywide Home Loans". The "Proof of Service" is included with the Purported Arbitration Claim as a part of Exhibit "C" hereto.

36.    Countrywide has no employee named Michael Zunign. Moreover, and in any event, mailing a purported arbitration claim to Michael Zunign, or to Zuniga, is an improper and invalid method of serving Countrywide, and Zuniga.

37.    On February 9, 2004, AAI, including by and through purported arbitrator Shrout and purported "Director of Arbitration" Bird, issued a purported "Award" in the Purported Arbitration Case, which, among other things, purportedly awarded damages in favor of Zumpano in the total amount of $40,900.00 (the "**Purported Arbitration Award**"). A true and correct copy of the Purported Arbitration Award is attached hereto as Exhibit "D".

38.    It is unclear whether or not the unilateral and non-binding Zumpano Freemen Letter (Exhibit "B" hereto), the Purported Arbitration Case, the Purported Arbitration Claim, and/or the Purported Arbitration Award issued by the Sham Arbitral Defendants are meant to

apply to Countrywide, to Zuniga as an individual, to Zuniga as a purported officer of Countrywide, to Zuniga as some sort of business entity, or to any combination of the above. None of these, however, is legally permissible, supportable, or defensible.

39.    Upon receipt of the Purported Arbitration Award, Countrywide and Zuniga, through legal counsel, wrote to AAI on March 26, 2004, informing AAI of the defective service of the Purported Arbitration Claim, and that neither the Deficiency Note, nor any other contract or agreement between Zumpano and the Plaintiffs, or either of them, contained any agreement or consent to arbitration, and that the Plaintiffs herein did not agree to, and indeed objected to, any arbitration of or relating to any claim between Zumpano and the Plaintiffs herein, and either of them, and demanding that AAI vacate the Purported Arbitration Award, and notify Countrywide in writing of the vacature of that the Purported Arbitration Award, by March 30, 2004.

40.    AAI has failed and refused to vacate the Purported Arbitration Award.

41.    The Purported Arbitration Award is entirely opposite of reality and without foundation.  Countrywide has not defaulted on any obligation to Zumpano, under the Deficiency Note or otherwise.  Plaintiffs do not have, and have not breached any obligation to Zumpano.

### FIRST CAUSE OF ACTION
(Declaratory Relief – the Purported Arbitration Award is a Nullity)

42.    Plaintiffs incorporate into and make a part of this cause of action each and every allegation in this Complaint.

43.    A written contract or agreement to submit to arbitration is an indispensable jurisdictional prerequisite to any valid arbitration proceeding and award.

44.     There is no contract or agreement, written or otherwise, between Countrywide or Zuniga, on the one hand, with Zumpano, on the other hand, for or agreeing to submit to arbitration of any dispute or claim between any of those parties

45.     Countrywide and Zuniga have objected, both to AAI (including its personnel, Shrout and Nelson) and to Zumpano, to the lack of authority and jurisdiction of the AAI to hear or in any way rule upon the Purported Arbitration Case and the Purported Arbitration Claim, and to issue any Purported Arbitration Award.  Plaintiffs further have expressly, in writing and otherwise, requested AAI (including its personnel, Shrout and Nelson) to immediately notify Plaintiffs' legal counsel in writing by the close of business on Tuesday, March 30, 2004, that the Purported Arbitration Award has been vacated by AAI and that the underlying Purported Arbitration Claim and Purported Arbitration Case has been dismissed.

46.     AAI has failed and refused to vacate the Purported Arbitration Award.

47.     Upon information and belief, AAI is a fictitious entity with absolutely no authority whatsoever, including, without limitation, no authority or jurisdiction to enter any binding arbitration award, including not against Countrywide or against Zuniga.

48.     The stated address of AAI in St. George, Utah is in fact not its address at all, but rather the address of a commercial mail drop site.  The telephone number listed on AAI's letterhead was only answered once out of the numerous calls that have been made to it by Countrywide.  Indeed, it was the very first call made that was answered, indicating that AAI may have screened its calls and chose not to answer those placed by Countrywide thereafter.

49.     Since there was no contract or agreement by which Countrywide or Zuniga agreed to submit any dispute or claim to arbitration, AAI had no authority or jurisdiction over the

Purported Arbitration Claim, to hear the Purported Arbitration Case, or to issue the Purported
Arbitration Award.

50.     Valid and effective service of process is another indispensible jurisdictional
prerequisite to any valid arbitration proceeding and award.

51.     No valid service was made or otherwise effected upon Countrywide nor upon
Zuniga.

52.     AAI and its personnel Shrout, Bird, Nelson, and Jones failed to address, evaluate,
consider and resolve the issue of the authority and jurisdiction of AAI, including, without
limitation, the absence of any contract or other agreement of all parties to submit to arbitration as
is required by the Federal Arbitration Act (including, without limitation, 9 U.S.C. § 2) and by
AAI's own Code of Procedure (including, without limitation, Rules 1.A., 2.C., 5.M., 12.A.2.,
20A., and 48.A. of AAI's Code of Procedure), and valid service upon Countrywide and Zuniga.

53.     Zumpano, AAI, Shrout, Bird, Nelson, and Jones proceeding with the Purported
Arbitration Case and issuing the Purported Arbitration Award, and their failure and refusal to
vacate the Purported Arbitration Award after having been notified of AAI's lack of authority and
jurisdiction over Countrywide and Zuniga as to the authority and jurisdiction required for such
purported arbitration, was and constituted violations of the Federal Arbitration Act (including,
without limitation, 9 U.S.C. §§ 10(a)(1) – (4)), the AAI's own Code of Procedure, and in
violation of the rights of the Plaintiffs herein under and pursuant to the United States
Constitution, for and due to which the Purported Arbitration Award is a nullity, void, and
invalid.

54.    The rights of Countrywide, Zuniga, and each of them, under the United States Constitution, the Federal Arbitration Act, and otherwise, have been prejudiced due to and as a direct and proximate result of the actions and omissions of Zumpano, AAI, Shrout, Bird, Nelson, and Jones that caused and led to the purported filing of the Purported Arbitration Claim, the continuation of the Purported Arbitration Case, and the issuance of the Purported Arbitration Award.

55.    Pursuant to 28 U.S.C. § 2201, Rule 57 of the Federal Rules of Civil Procedure, and otherwise, Plaintiffs are entitled, by virtue of the foregoing, to declaratory judgment that the Purported Arbitration Claim, the Purported Arbitration Case, and the Purported Arbitration Award were, and are, a nullity, and void, invalid, and of no force or effect whatsoever, and vacating and setting aside the Purported Arbitration Award.

## SECOND CAUSE OF ACTION
(Declaratory Relief – Confirming Continuing Validity of the Deficiency Note)

56.    Plaintiffs incorporate into and make a part of this cause of action each and every other allegation in this Complaint.

57.    For the reasons set forth throughout this Complaint, the Purported Arbitration Claim, the Purported Arbitration Case, and the Purported Arbitration Award are all a nullity, void, invalid, and of no force or effect.

58.    Moreover, the Purported Arbitration Claim, the Purported Arbitration Case, and the Purported Arbitration Award could not, did not, and did not even purport to, deal with, rule upon, or otherwise affect, the validity and enforceability of the Deficiency Note.

59.     Pursuant to 28 U.S.C. § 2201, Rule 57 of the Federal Rules of Civil Procedure, and otherwise, Countrywide is entitled to declaratory judgment that the Deficiency Note is still valid, enforceable, and in full force and effect, notwithstanding anything that occurred in or relating to the Purported Arbitration Case, the Purported Arbitration Claim, and the Purported Arbitration Award.  On their face neither the Purported Arbitration Claim nor the Purported Arbitration Award directly affects the Deficiency Note; Countrywide asks for, and is entitled to, this requested declaratory judgment only to the extent that the Purported Arbitration Award implies anything to the contrary or may conceivably be used, relied upon, or otherwise argued by Zumpano to argue that the Purported Arbitration Award somehow impacts or affects the Deficiency Note.

60.     The Deficiency Note provides that Zumpano is required to pay Countrywide costs and reasonable attorneys fees in the event of any default there under or any action for enforcement thereof.

61.     Plaintiff Countrywide has been forced to retain Fabian & Clendenin, P.C. to commence these proceedings and is entitled to recover from Defendant Zumpano its costs and fees herein.

### THIRD CAUSE OF ACTION
(Abuse of Process – Against All Defendants)

62.     Plaintiffs incorporate into and make a part of this cause of action each and every other allegation in this Complaint.

63.     Zumpano had an ulterior purpose (other than seeking redress for any legitimate wrong allegedly done to him, which the Plaintiffs herein expressly deny) in filing the Purported Arbitration Claim and otherwise initiating and continuing with the Purported Arbitration Case, including, upon information and belief, and without limitation, seeking without any legal basis to escape, evade, or offset liability on the Deficiency Note, and to harass Countrywide and Zuniga and to cause them to incur otherwise unnecessary costs and expenses (including, without limitation, attorney fees and costs) relating to and arising out of the bad-faith, meritless, and unfounded Purported Arbitration Claim and Purported Arbitration Case.

64.     Zumpano willfully acted improperly in the use of process in filing the Purported Arbitration Claim and otherwise initiated and continuing with the Purported Arbitration Case, including, without limitation, in claiming and alleging to the AAI and its personnel and otherwise that he had any contract or agreement with Countrywide other than the Zumpano Note, that he had any contract or agreement at all with Zuniga, that there was any breach of any contract or agreement by Zuniga or Countrywide, and that Zuniga and Countrywide had in any way agreed to any arbitration of any claim or dispute with Zuniga, all, upon information and belief, in the furtherance of Zumpano's ulterior purposes including as set forth above to gain collateral advantage extraneous to the purported merits (or complete lack thereof as is the case) of the Purported Arbitration Claim and the Purported Arbitration Case.

65.     At all relevant times Zumpano knew that his claims and allegations in and relating to the Purported Arbitration Claim and the Purported Arbitration Case, including, without limitation, those claims and allegations set forth in the immediately preceding paragraph, were false, untrue, without merit, nonsensical, and otherwise unfounded; Zumpano nevertheless initiated and pursued the Purported Arbitration Claim and the Purported Arbitration Case for the purposes of and with the intent of achieving ulterior purposes and improper ends for which the process was not intended.

66.     AAI, Shrout, Bird, Nelson, and Jones, and each of them (collectively, the "**Sham Arbitral Defendants**"), played an active and integral part in the continuation, and perhaps the initiation, of the Purported Arbitration Case, and ultimately the Purported Arbitration Award.

67.     The Sham Arbitral Defendants, and each of them, had an ulterior purpose in and for continuing with, and perhaps initiating, the Purported Arbitration Case, including, upon information and belief, and without limitation, seeking to harass Countrywide and Zuniga and to cause them to incur otherwise unnecessary costs and expenses (including, without limitation, attorney fees and costs).

68.     The Sham Arbitral Defendants, and each of them, willfully acted improperly in continuing with the Purported Arbitration Case, and ultimately in the issuance of the Purported Arbitration Award, with the knowledge that it had no authority or jurisdiction over Countrywide or Zuniga, nor either of them.

69.     At all relevant times the Sham Arbitral Defendants, and each of them, knew or should have known that they were wholly without authority or jurisdiction to continue the Purported Arbitration Case and to issue the Purported Arbitration Award, but they nevertheless

continued with the Purported Arbitration Case and issued the Purported Arbitration Award for the purposes of and with the intent of achieving ulterior purposes and improper ends for which the process was not intended.

70.     Countrywide and Zuniga have suffered and will continue to suffer injury and damage as a direct and proximate result of the improper and wrongful actions and omissions of each of the Defendants, without limitation, all attorney fees and costs incurred herein, for which Countrywide and Zuniga each are entitled to judgment herein against all Defendants, and each of them, jointly and severally, in an amount which will be shown at the trial hereof.

71.     Countrywide and Zuniga are entitled to have the wrongfully issued Purported Arbitration Award declared by this Court to be a nullity, void, invalid, and of no force or effect whatsoever, and to have this Court vacate and set aside the Purported Arbitration Award.

72.     Countrywide further is entitled to have the Deficiency Note declared by this Court to still be valid, enforceable, and in full force and effect.

73.     Defendants' respective conduct as set forth above were performed with an express appreciation of the damages that would likely result from such conduct and was willful and malicious, intentionally fraudulent, or manifests a knowing and reckless indifference toward and a disregard of the rights of Countrywide and Zuniga.

74.     Plaintiffs, and each of them, are entitled to recover punitive and exemplary damages from all Defendants, and each of them, jointly and severally, in at least the amount of $500,000.00, as shall be shown at the trial hereof, to deter further instances of similar lawless behavior by Defendants.

## FOURTH CAUSE OF ACTION

(Intentional Interference with Economic Relations – Against the Sham Arbitral Defendants)

75.    Plaintiffs incorporate into and make a part of this cause of action each and every other allegation in this Complaint.

76.    The Sham Arbitral Defendants, and each of them, intentionally interfered with Countrywide's and Zuniga's existing and prospective economic relations by, among other things, improperly and without authority purporting to exercise authority and jurisdiction over Countrywide and Zuniga, and each of them, and to enter a judgment or award (the Purported Arbitration Award) against Countrywide and Zuniga.

77.    The Sham Arbitral Defendants' purported exercise of authority over and purported entry of the Purported Arbitration Award against Countrywide and Zuniga was contrary to the Federal Arbitration Act and to AAI's own internal Code of Procedure, and without any contract or agreement of Countrywide or Zuniga submitting either of themselves to any arbitration proceedings and without valid service upon either of them.

78.    The Purported Arbitration Award issued by the Sham Arbitral Defendants, and each of them, is without any foundation or basis, and is and constitutes misconduct, misbehavior, and excessive and unfounded exercise of purported authority by these Defendants and evidences a knowing and manifest disregard by them of the law.

79.    The Sham Arbitral Defendants took the actions ultimately culminating in the issuance of the Purported Arbitration Award with the improper purpose of frustrating Countrywide's ability to collect the Deficiency Note, and of subjecting Countrywide and Zuniga to the expense of defending harassing collection action by Zumpano.

80.     The Sham Arbitral Defendants took the actions ultimately culminating in the issuance of the Purported Arbitration Award with the improper purpose of interfering with Countrywide's and Zuniga's respective business and prospective economic relations, including, without limitation, Countrywide's and Zuniga's respective credit ratings and relationships.

81.     The Sham Arbitral Defendants' actions were knowingly wrongful and without authority were improper means of interference with Countrywide's and Zuniga's respective businesses and prospective economic relations, including, without limitation, Countrywide's ability to collect the Deficiency Note, and Countrywide's and Zuniga's respective credit ratings and relationships.

82.     Countrywide and Zuniga are entitled to have the wrongfully issued Purported Arbitration Award declared by this Court to be a nullity and completely void, invalid, and of no force or effect whatsoever, and to have this Court vacate and set aside the Purported Arbitration Award.

83.     Countrywide further is entitled to have the Deficiency Note declared by this Court to both still be valid, enforceable, and in full force and effect.

84.     Countrywide and Zuniga each have suffered and will continue to suffer injury and damage as a direct and proximate result of the improper, unauthorized, and knowingly wrongful actions and omissions of each of the Sham Arbitral Defendants', including, without limitation, all attorney fees and costs incurred herein, for which Countrywide and Zuniga each are entitled to judgment herein against the Sham Arbitral Defendants, and each of them, jointly and severally, in an amount which will be shown at the trial hereof.

85.     The Sham Arbitral Defendants' respective actions and omissions, including as set forth above, were performed with an express appreciation of the damages that would likely result from such conduct and was willful and malicious, intentionally fraudulent, or manifests a knowing and reckless indifference toward and a disregard of the rights of Countrywide and Zuniga.

86.     Plaintiffs, and each of them, are entitled to recover punitive and exemplary damages from the Sham Arbitral Defendants, and each of them, jointly and severally, in at least the amount of $500,000.00, as shall be shown at the trial hereof, to deter further instances of similar lawless behavior by the Sham Arbitral Defendants.

87.     By and through their various respective actions and omissions, including without limitation as set forth more fully above, the Sham Arbitral Defendants, and each of them, intentionally interfered with the Countrywide's existing contractual relations with Zumpano.

88.     Such interference was for an improper purpose of, perhaps among other things, seeking to avoid, offset, or otherwise Zumpano's liability on and under the Deficiency Note.

89.     By and through their various respective actions and omissions, including without limitation as set forth more fully above, the Sham Arbitral Defendants, and each of them, intentionally interfered with Countrywide's and with Zuniga's prospective economic and contractual relations, including, without limitation, their respective credit ratings and relationships.

90.     Such interference was also by the improper means of accepting, initiating, and continuing with the Purported Arbitration Case, including to the Purported Arbitration Award, where the Sham Arbitral Defendants, and each of them, knew, or should have known, there was

no basis nor jurisdiction for the Purported Arbitration Case, including, without limitation, that there was no written or enforceable agreement by Plaintiffs to submit to arbitration.

91.     The Sham Arbitral Defendants' actions and interference as set forth above has caused injury and damages to Plaintiffs, and each of them, the total amount of which will be shown at the trial hereof but which includes, and is not limited to, all attorney fees and costs incurred and yet to be incurred in this case seeking confirmation that the Purported Arbitral Award is a nullity and to vacate and invalidate the Purported Arbitration Award.

92.     The Sham Arbitral Defendants' actions and interference as set forth above was intentional, willful, deliberate, and in knowing and reckless disregard of the rights and interests of the Plaintiffs in this case.

93.     Plaintiffs are entitled to exemplary and punitive damages against the Sham Arbitral Defendants, and each of them, jointly and severally, in an amount to be shown at trial which Plaintiffs allege should be not less than $500,000.00 to deter further instances of such lawless behavior by the Sham Arbitral Defendants, and each of them.


## FIFTH CAUSE OF ACTION
### (Injunctive Relief)

94.     Plaintiffs incorporate into and make a part of this cause of action each and every other allegation in this Complaint.

95.     Upon information and belief Zumpano intends to or may seek to have the Purported Arbitration Award confirmed or otherwise enforced as an order or judgment of a Court of unknown jurisdiction or venue, or to otherwise take action seeking to collect upon or

otherwise enforce the Purported Arbitration Award, to report the Purported Arbitration Award to a credit reporting agency(ies), or to sell, assign, or otherwise transfer, lien, or encumber the Purported Arbitration Award, or any rights or interests in, to, or under it, to some other person or entity (any and all such intended or possible actions by Zumpano relating or pertaining to the Purported Arbitration Award are referred to hereinafter collectively as **"Enforcement Action"**).

96.     Zumpano initiating or in any way proceeding with any Enforcement Action relating or pertaining to the Purported Arbitration Award, including without limitation during the pendency of this action and before the issues in this lawsuit as to the validity and enforceability of the Purported Arbitration Award have been ruled upon by the Court, would result in immediate, great, and irreparable injury and damage to Plaintiffs, who have no plain, speedy, or adequate remedy at law unless Zumpano is restrained and enjoined from taking any Enforcement Action.

97.     Any Enforcement Action by Zumpano could render a final judgment for Plaintiffs herein ineffectual in the absence of temporary, preliminary, and permanent injunctive relief.

98.     Plaintiffs are entitled to a temporary restraining order and preliminary injunction during the pendency of this action, and thereafter to a permanent injunction, restraining and enjoining Zumpano from initiating or in any way proceeding with any Enforcement Action of any type or nature whatsoever of, on, or relating or pertaining in any way to the Purported Arbitration Award.

**WHEREFORE**, Plaintiffs pray for judgment as follows:

1.       Declaring that the Purported Arbitration Case, the Purported Arbitration Claim, and the Purported Arbitration Award were, and are, a nullity and void, invalid, and of no force or effect whatsoever, and setting aside the Purported Arbitration Award, including, without limitation, for lack of jurisdiction, for defective service of process, and for violations of Plaintiffs' rights under the United States Constitution and the Federal Arbitration Act for Article III adjudication of the parties' rights and claims.

2.       Declaring that the Deficiency Note is still valid, enforceable, and in full force and effect, notwithstanding anything that occurred in or relating to the Purported Arbitration Case, the Purported Arbitration Claim, and the Purported Arbitration Award.

3.       For judgment against the Defendants, and each of them, jointly and severally, for an amount to be shown at the trial hereof for all injuries and damages Plaintiffs, and each of them, have and will suffer due to and as a result of Defendants' wrongful abuse of process, and the Sham Arbitral Defendants' intentional interference with economic relations.

4.       For exemplary and punitive damages against all Defendants, and each of them, jointly and severally, for their willful, knowing, intentional, and reckless disregard of the rights of Plaintiffs, which should be in excess of $500,000.00 to deter further instances of such lawless behavior by Defendants.

5.       For a temporary restraining order and preliminary injunction during the pendency of this action, and thereafter to a permanent injunction, restraining and enjoining Zumpano from initiating or in any way proceeding with any Enforcement Action of any type or nature whatsoever of, on, or relating or pertaining in any way to the Purported Arbitration Award.

6.    For reasonable attorney fees and costs incurred herein.

7.    For interest on all judgment amounts at the highest legal rate of interest until paid

in full.

8.    For such other and further relief as the Court deems just and equitable.

DATED this _29th_ day of April, 2004.

Daniel W. Anderson
Bradley L. Tilt
FABIAN & CLENDENIN,
  a Professional Corporation
Attorneys for Plaintiffs

# Exhibits/ Attachments to this document have **not** been scanned.

# Please see the case file.